Vito Fiore and Della Fiore, His Wife, Plaintiffs-Appellees, v. City of Highland Park, a Municipal Corporation and Body Politic of the State of Illinois, Defendant-Appellant.

Gen. No. 67–130.

Second District.

March 6, 1968.

Rehearing denied April 4, 1968.

Thomas H. Compere, Corporation Counsel, of Highland Park (Berle L. Schwartz, Assistant Corporation Counsel, of counsel), for appellant.

John F. Grady, of Waukegan, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

After giving due consideration to the peripheral contentions advanced by the appellant City, we are of the opinion that the issue on this appeal is whether the decree below conforms to the mandate of this court in Fiore v. City of Highland Park, 76 Ill App2d 62, 221 NE2d 323 (1966).

In that case the plaintiffs' basic contention was that their property was rendered virtually useless by the G–1 zoning, herein called O & R (Office and Research), and that such zoning ordinance bore no substantial relationship to the public welfare. The restrictive effect of defendant's O & R zoning restrictions was graphically portrayed by the exhibit set forth on page 70 of the opinion which indicated the size and location of O & R buildings permitted under such ordinance with reference to plaintiffs' land and the adjoining properties. At page 73 we stated:

> "It is fair to conclude from the record that there is a need for additional apartment facilities in the community. . . . Clearly, in view of the apparent lack of need and interest in O & R land in the community, coupled with the severe effects of the setback restrictions on plaintiffs' land, there cannot be anticipated any reasonably immediate use of plaintiffs' land for O & R purposes. Under these circumstances, the zoning classification given plaintiffs' land serves no public purpose and most certainly deprives the plaintiffs' land of considerable value."

And at page 74, the court considered the City's contention that the plaintiffs' land was equally suitable for single-family residential development, in these words:

> "Such fact, if true, would not be determinative of any issue in this case. When the plaintiffs first sought to have their property rezoned, it was zoned for single-family residential use. Had the property remained so zoned, the validity of such zoning, measured by the standards to which we have referred, would properly have been an issue in determining whether the plaintiffs' petition was rightly denied. By the time this matter came to trial, however, the legislative body had already made a determination as

27

to the classification of this property. It had decided that it was in the interest of the general welfare that this land be zoned O & R—not single-family."

We there held that insofar as the trial court decreed that the single-family zoning restriction was void as applied to plaintiffs' land, its decree was obiter dicta and invalid; and that the further part of the decree which provided that "The defendant is hereby ordered to permit the said portions of plaintiffs' property to be used for multiple-family dwellings under the classification 'F' of the Highland Park Zoning Ordinance . . . ," was likewise improper and void in that it was too broad. It was our belief, and we stated, that the most that a court may do after declaring an existing zoning ordinance void as applied to certain property is to find that the specific use contemplated by the owner is reasonable and may be permitted.

At pages 76 and 77 we stated:

"In the case at bar, the plaintiffs presented evidence as to the nature of the apartment complex they intended to construct on these premises. The decree of the trial court should be framed with reference to the evidence of this intended use and permit such use only, rather than any permitted under the applicable multiple-family zoning restriction. If the court finds that such evidence is not sufficient to enable it to intelligently frame its decree, it should hear additional evidence pertinent to such use.

"*That part of the decree of the trial court which declared the existing zoning void, as applied to the property in question, is affirmed;* and that part of the decree which adjudged the single-family zoning restriction void as applied to plaintiffs' land, and which ordered the defendant to permit the said portions of plaintiffs' property to be used for multiple-family dwellings under the 'F' classification of

the zoning ordinance, is reversed; *and the cause is remanded to the trial court with directions to frame its decree pertaining to the permissive use of the land in question with reference to the evidence of plaintiffs' contemplated use and to hear further evidence in this regard, if necessary.*

*"Affirmed in part and reversed in part; and remanded with directions."* (Emphasis ours.)

On November 16, 1966, while the Petition for Rehearing was still pending before this court, the City published a notice that a hearing would be held before the Plan Commission on December 6, 1966, for the purpose of considering a rezoning of plaintiffs' property back to a single-family classification. The Petition for Rehearing was denied on November 30, 1966. The scheduled "hearing" before the Plan Commission was held on December 6, 1966, at which time the plaintiffs appeared by their counsel, and filed objections to the jurisdiction of the Plan Commission to take any action with respect to the property. No witnesses appeared at the "hearing," no one spoke in favor of the "rezoning," and the Plan Commission simply announced that it would take the matter under advisement.

Meanwhile, the City filed a Petition for Leave to Appeal to the Supreme Court, and there again sought to uphold the validity of the "O & R" Zoning Ordinance. The plaintiffs answered this petition and, on March 28, 1967, the Supreme Court denied it. Thereafter, on April 10, 1967, the City passed an ordinance purporting to "rezone" plaintiffs' property back to the same single-family classification it had in 1963. On May 18, 1967, the trial court entered its supplemental decree, providing for a specific type of multiple-family use for the property and holding that the ordinance of April 10, 1967, purporting to rezone the property to single-family, was invalid.

29

On this appeal the City contends that under the doctrine of separation of powers between the three branches of government, the courts do not have the power to prevent an act of legislative discretion by a City Council exercised pursuant to a specific grant of authority from the state legislature; that the General Assembly of the State of Illinois has granted to municipal corporations specific powers to enact ordinances creating zoning classifications and regulations pertaining to the use of land within the municipality; and that the supplemental decree of the trial court entered May 18, 1967, violates the constitution of the State of Illinois in adjudging a zoning ordinance invalid on the grounds that the City Council of the City of Highland Park did not have the authority to enact such an ordinance.

The City further asserts that plaintiffs' property is suitable for use under its present single-family residential classification, and the burden is upon them to show by clear and convincing proof that the ordinance of April 10, 1967, is arbitrary and unreasonable; that there is no vested right in the continuance of a zoning ordinance; that the disposition of this case should be based upon the zoning classification of the subject property on the date of the supplemental decree; and that the increase in intensity of use allowed in the supplemental decree does not conform to the mandate of the Appellate Court.

The plaintiffs urge that their rights were crystallized by the original decree, and that the City had no right to "rezone" the property by its ordinance of April 10, 1967; that the suitability of plaintiffs' property for single-family use is irrelevant; and that the supplemental decree is in accordance with the mandate of this court and should be affirmed.

The differences in the contentions of the parties arise because they reason from fundamentally different premises. The City has manifested a complete disregard for the opinion and mandate of this court except in the one

area where it may benefit therefrom—the matter of the increase in intensity of use allowed in the supplemental decree. Otherwise, it has proceeded in a cavalier manner, oblivious to the language, intent and meaning of the opinion and mandate.

■ We see no valid separation of powers problem in the entry of the supplemental decree. Under Article 6, section 9 of the Illinois Constitution, the Circuit Court has original jurisdiction of all justiciable matters. The jurisdiction of a court over the subject matter and parties in a case, once fully attached, as in the case at bar, continues until all issues of fact and law have been finally determined. In general, the jurisdiction ceases on the rendition of a final judgment or decree, except for such purposes as the enforcement or correction of the judgment or decree. Kovac v. Kovac, 26 Ill App2d 29, 47, 48, 167 NE2d 281 (1960).

■ In Tindall v. Meeker, 1 Scam (2 Ill) 137 (1834), at page 139, the court stated:

> "The rule . . . is, if an inferior court has jurisdiction ab origine, no subsequent fact arising in the case, can defeat it, when it was lawful in the inception."

Likewise, in Irmegar v. County of Tazewell, 264 Ill 172, 106 NE 227 (1914), at page 174, the court stated:

> *"The general rule is, that the jurisdiction of a court over a cause depends on the state of facts at the time the action is brought; that after jurisdiction has once vested it cannot be divested by subsequent events. Change of residence or of the condition of the parties or of the amount in dispute cannot take away jurisdiction that has once attached. (Tindall v.* Meeker, 1 Scam 137; Alley v. McCabe, 147 Ill 410; Mullen v. Torrance, 22 US 536; Clarke v. Mathewson, 37 id. 163; United States v. Dawson, 56 id. 467;

31

State v. Wilkins, 67 NH 164; Hawes on Jurisdiction of Courts, sec 23.)" (Emphasis ours.)

Also see: In re 431 Oakdale Ave. Bldg. Corp., 28 F Supp 63.

The trial court acquired jurisdiction of the parties and of the subject matter in the case at bar under the state of facts existing when the action was brought. However, before the matter came on for trial the City had rezoned the plaintiffs' land to O & R. The jurisdiction which the court had acquired continued, and at the trial the validity of the O & R zoning was challenged, and determined adversely to the City. (76 Ill App2d 62, 74, 75, 221 NE2d 323.) Also see: Ridgewood Air Club v. Board of Adjustment, 136 NJL 222, 55 A2d 100, 101, 102 (1947).

The City was aware of the import of the decision and mandate of this court as is reflected in the report of its Plan Commission dated February 2, 1967, which stated, in part, as follows:

> "In June, 1964, before the Commission had concluded its hearings, the original petitioner instituted legal proceedings which he amended after the Council acted in September, attacking the G–1 zoning with respect to a part of his parcel as arbitrary and unreasonable and requesting multiple family use for that portion. After trial, the Circuit Court of Lake County granted the requested relief.
>
> "The Appellate Court affirmed the part of the decree voiding the G–1 classification, but reversed that part which held single-family zoning void and which ordered the City to permit use under the F classification. The Appellate Court remanded the cause to the trial court with directions to reframe its decree relating to the permissive use of the land with reference to the evidence of the contemplated use for multiple family, and directed the taking of further evidence, if necessary. The apparent purport

of the Appellate Court decision was to allow the use of the premises for multiple-family purposes provided the decree was framed in terms of particular use and not in terms of the F classification. The City has petitioned the Illinois Supreme Court for Leave to Appeal, contending, inter alia, the (sic) the lower courts erroneously voided the G–1 zoning and that in any event the effect of such voiding would be to reinstate the prior B–1 single-family zoning."

■ In the light of the language, intent and meaning of the opinion and mandate, and the understanding of it, as indicated in the report of the Plan Commission, the act of the City in rezoning plaintiffs' property to the same single-family classification which it had in 1963, indicated a complete disregard for, and constituted an attempt to thwart, the opinion and mandate of this court. We have utmost respect and deep regard for the philosophy embodied in the principle of the separation of the powers of the three branches of our government. However, a City which is an appellant in zoning litigation, cannot parlay the doctrine of separation of powers into an authorization to exercise its delegated legislative powers after the case is decided adversely to it and remanded to the trial court with directions, and thereby frustrate and void the opinion and mandate of the reviewing court to which it submitted its case for decision.

■ The question on the original review of the case at bar was the constitutionality of the zoning ordinance as applied to the plaintiffs' property. The construction, application or constitutionality of an ordinance rests with the courts, and not with the legislative branch of the City, which is the creature of the General Assembly.

■ We completely recognize that the General Assembly has delegated to the City the power to enact a zoning ordinance. However, it is also beyond dispute that the courts have the jurisdiction to determine the

33

application and constitutionality of such ordinance with reference to the plaintiffs' property. City of Aurora v. Burns, 319 Ill 84, 149 NE 784 (1925). Jurisdiction is the power of the court to make a wrong, as well as a right decision. Pope v. United States, 323 US 1, 14 (1944).

■ ■ In general, the legislative department of the government is prohibited from encroaching on, or unduly burdening the judicial department in the exercise of its functions. Agran v. Checker Taxi Co., 412 Ill 145, 148–150 incl., 105 NE2d 713 (1952) ; People v. Scott, 383 Ill 122, 126, 48 NE2d 530 (1943). Specifically, the legislature may not, by legislation passed after causes of action have been adjudicated by a reviewing court, control or effect the result of the litigation. People v. Owen, 286 Ill 638, 641, 642, 122 NE 132 (1919) ; People v. New York Cent. R. Co., 283 Ill 334, 335, 119 NE 299 (1918) ; Chicago & E. I. R. Co. v. People ex rel. McCord, 219 Ill 408, 410, 411, 76 NE 571 (1906).

■ When we, as a reviewing court, affirmed the judgment in part and reversed it in part and remanded the cause to the trial court with directions, our opinion and mandate was binding on the parties litigant who had submitted the matters to us for decision. It did not enhance the stature of the City, its officers or counsel, because of their disappointment in the outcome of the litigation, in our Court and the Supreme Court, to seek to overrule the force and effect of the opinion and mandate of this court by further legislative action after the cause had been adjudicated by us, and our opinion finalized by the Supreme Court by its denial of the City's petition for Leave to Appeal.

■ Likewise, the trial court was bound by the decision and mandate of this court. In Berry v. Lewis, 27 Ill 2d 61, 187 NE2d 688 (1963), at pages 62 and 63, the court stated:

34

"After a judgment is reversed and the cause is remanded the inferior court can take only such further proceedings as conform to the judgment of the reviewing court. (People ex rel. Bauer v. Henry, 10 Ill2d 324; Ptaszek v. Konczal, 10 Ill2d 326.) When the court of appellate jurisdiction, in considering a case, determines the issues and decides the questions involved on their merits, reversing the judgment and remanding the cause with directions to proceed in conformity with the views expressed in the opinion, there is no power in the court below except to enter a final order or judgment without retrial. Nye v. Nye, 411 Ill 408; In re Estate of Naher, 210 Ill 160."

 Thus, the trial court had no choice upon remand, other than to enter a supplemental decree in accordance with the mandate of this court. A fair consideration of: Sinclair Pipe Line v. Richton Park, 19 Ill2d 370, 167 NE2d 406 (1960); Franklin v. Village of Franklin Park, 19 Ill2d 381, 167 NE2d 195 (1960); Fiore v. City of Highland Park, 76 Ill App2d 62, 221 NE2d 323 (1966); and Harshman v. City of DeKalb, 64 Ill App2d 347, 212 NE2d 146 (1965), cannot but lead us to the conclusion that the City, deliberately or otherwise, misconstrued the meaning of the word "unzoned" as used herein. By construing the word out of context with the substance of those opinions, the City sought to justify its unwarranted act of rezoning the plaintiffs' property after its appeal had been adjudicated by the reviewing courts. In the light of the cases cited and the principles set forth, the adoption of the ordinance of April 10, 1967, was unwarranted, and it was necessary that the trial court declare it invalid in the supplemental decree, as an act beyond the power of the City. To hold otherwise, under the circumstances of this case, would relegate the decisions of reviewing courts to the status of an exercise of futility.

In Franklin v. Village of Franklin Park, supra, 385, the court, in delineating why the trial court should frame its decree so as to permit a particular use when it finds the existing zoning invalid, stated:

> "If the ordinance was declared unconstitutional and the land left unzoned, the plaintiff would be free to use his land for heavy industrial uses not contemplated at the trial, or the village might rezone to another classification that would still exclude most commercial and industrial uses. In either case the true holding of the court would be flaunted. The court may frame its judgment to effectuate its findings as to the rights of the parties."

Our opinion, and the City's understanding of it—as reflected in the Plan Commission report—has heretofore been set forth. A reasonable construction of our opinion could not possibly lead the City to the conclusion that it was free to force the plaintiffs into "further litigation due to further rezoning by the municipality" after adjudication by Illinois reviewing courts. Such conclusion would put the hallmark of approval on one of the evils which the decisions in Village of Richton Park, Village of Franklin Park, City of Highland Park and City of DeKalb pointed out and sought to avoid.

We heretofore adjudicated the issues of the applicability of the single-family zoning classification as it existed prior to the O & R zoning. We held that the City, prior to the decision in the trial court, removed the single-family classification from consideration by its determination that it was in the interest of the general welfare that this land be zoned O & R. The pleadings at the trial challenged the O & R zoning and such issue was before the trial court. Thus, at this stage of these proceedings, the suitability of the plaintiffs' property for single-family use is not in issue and is irrelevant.

The only matter before the trial court on remand was the framing of "its decree pertaining to the permissive use of the land in question with reference to the plaintiffs' contemplated uses. . . ." If necessary, it could hear further evidence in this regard.

■ The City may properly raise in this review the propriety of the trial court's action in increasing the intensity of use as allowed in the supplemental decree. We regard the change in construction plans as reflected in the supplemental decree as reasonable. The changes with reference to underground parking, a decrease in the number of buildings, and the increase in the number of units from 144 to 168, will result in more open space on the land involved and a greater intensity of its use. We do not regard this as any change in the concept of the development of the property.

Time has passed due to this litigation, the needs of the area have changed with the delay, and construction costs have increased, as have the prices of equipment and furnishings. Also, under the "F multiple-family" use classification, approximately 288 units would be permitted on the land in question. In view of all the testimony on the question of intensity of use, as well as on the total issue of the permissive use to be made of the land in question, we cannot say that the use specified in the supplemental decree is against the manifest weight of the evidence.

■ It is our duty to review the evidence, and to reverse the verdicts of juries or the judgments of courts whenever we find such verdicts or judgments clearly against the manifest weight of the evidence. Elgin Lumber & Supply Co. v. Malenius, 90 Ill App2d 90, 232 NE2d 319, 323 (1967) ; Revcor, Inc. v. Fame, Inc., 85 Ill App2d 350, 356, 228 NE2d 742 (1967). Such circumstance is not present in the case at bar.

Accordingly, the supplemental decree of the trial court is affirmed.

Decree affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.