THE FIRST NATIONAL BANK OF SKOKIE, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF SKOKIE, Defendant-Appellee.

First District (5th Division) No. 61298

Opinion filed December 23, 1975.

Modified upon denial of rehearing February 13, 1976.

Phillip C. Goldstick and David W. Rosenberg, both of Chicago, for appellants.

Harvey Schwartz, of Skokie (Gilbert Gordon, of counsel), for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court, as modified, upon denial of petition for rehearing:

Plaintiffs brought a declaratory judgment action seeking to have an existing B1 commercial zoning classification declared unconstitutional as applied to their property and further declaring a proposed use for the erection and construction of an apartment building to be proper. On October 1, 1974, the trial court ruled that the B1 classification was unconstitutional, but denied plaintiffs' prayer for approval of the proposed use of their property. On appeal, plaintiffs contend that the trial court erred by failing to grant the requested relief as to the specific proposed use.

The subject property is a trapezoidal shaped lot of approximately 23,000 square feet located at the northwest corner of Harms Road and Lincoln Avenue in Skokie. A two-story, multiple-family building facing Lincoln is located on the southwestern portion of the property. A similar building is located on the southeastern portion. On the northern half of the property is a wooden cabin and a shed.

Directly east of the subject property, on the northeast corner of Harms and Lincoln, is a small office building zoned B1. Similar commercial uses under the B1 classification extend further east along the north and south sides of Lincoln. Directly south of the subject property, across Lincoln, are single-family homes zoned R2 and a small store zoned B1. Adjoining the western boundary of the subject property are several two-story townhouses zoned R3 which extend to Lotus Avenue. A municipal parking lot zoned R4 is directly across Lotus Avenue from these townhouses. A complex, known as the Lotus Gardens, which includes apartments, condominiums and a pool, adjoins the parking lot approximately 250 feet west of the subject property and extends west to the Village boundary and north for 1½ blocks to Saint Peter's Cemetery. The complex is zoned R4. Directly north of the subject property are four single-family residences zoned R2 which extend to the cemetery.

At trial, the following evidence pertinent to this appeal was adduced. For the plaintiffs:

*Paul Jones*

He is a real estate developer and salesman. He purchased the subject property for $70,000 in 1971 relying upon the Village's 1969 Comprehensive Plan which showed the property zoned as R4. He planned to develop a three-story apartment building consisting of 12 two-bedroom apartments and 9 one-bedroom apartments and filed a petition with the Village to rezone the property to R4. He submitted a proposed plan for the development which he later stated should not be considered the final plan for the project. There is no demand for further strip shopping property under the B1 classification in this area. However, a substantial demand exists for R4 multiple-family dwellings.

On cross-examination, he admitted that he never inquired about the actual zoning classification of the property. The property has not been advertised for sale as B1 commercial property.

*Laura Ross*

She resides 150 feet north of the subject property. She is the daughter of the former owner of the property. She approached Paul Jones to purchase and develop the property because she admired an apartment building which he had constructed nearby and because she did not want stores or blank walls facing her home. On cross-examination, she admitted that three single-family houses separated her home from the subject property.

*Neil King*

He is the current president of a real estate firm and a former member of the Village Zoning Commission. The demand for commercial property in this area has decreased considerably in the past five years. There is an substantial demand for R4 multiple-family property in Skokie at the present time. The most recent rezoning in the area was by a court order which rezoned the parking lot at Lotus and Lincoln to R4. The fair market value of the subject property zoned B1 is $100,000 and if rezoned R4 it would be $155,000 to $170,000. In his opinion, the highest and best use of the property would be for apartments under the R4 zone based upon the demand for R4 property, the increased value of the property, and the character of the immediate neighborhood. On cross-examination he admitted that he would not personally buy B1 property which showed an appreciation from only $70,000 to $100,000 in three years.

*Thompson Dyke*

He is a planning consultant who advised the Village when it prepared its 1969 Comprehensive Plan. Multiple-family residential would be the highest and best use. He considered the immediate area, the character of the neighborhood, the topography, the relationship to the adjacent streets and the cemetery in reaching his opinion. On cross-examination, he admitted that his R4 recommendation had not been accepted by the Village in 1969.

For the defendant:

*Robert Molumby*

He is the Director of Planning for the Village. The highest and best use for the subject property would be compatible with the existing B1 zoning classification. He considered both the density progression and the vertical density in the neighborhood in reaching his opinion. Rezoning the property to R4 would encourage other commercial enterprises along Lincoln to request similar changes. An R3 classification would not be

compatible with the existing B1 classification, because of the height differential. He later revised this answer and stated that while R3 development would not be the highest and best use for the property, it would be an acceptable alternative. The proposed plan for development of the subject property does not conform to the revised off-street parking requirements of the Village.

On cross-examination, he admitted that he did not know the height of the proposed apartment building. He was not aware that the parking lot at the next corner had been rezoned to R4. The two-story commercial building immediately east of the subject property is partially vacant. The Morton Grove property adjoining the Village boundary which lies 400 feet west of the subject property is multiple-family residential.

*Edward Chrapla*

He is a traffic engineer employed by the Village. At an early morning inspection for on-street parking patterns in the area he found the street system to be saturated with parked vehicles. During an inspection later in the daytime, he found 30% of the curb space available for parking. Plaintiffs' planned development does not conform to present off-street parking requirements for a R4 zone. The proposed development would have an adverse effect upon on-street parking. Commercial development would not affect on-street parking because the critical demand for residential parking occurs after business hours. Although only 12 of 30 parking places are rented in the nearby municipal lot, he stated that no consideration would be given to those spaces by the Village in computing compliance with the off-street parking requirements for the proposed development.

OPINION

Since the defendant has not cross-appealed the trial court's declaration that the existing B1 classification was unconstitutional and void as to the subject property, we need not reach that issue in this appeal.

██ Plaintiffs contend the trial court erred by not granting the requested proposed use. In declaratory judgment actions where evidence is adduced on the reasonableness of a specific proposed use, the trial court may declare that plaintiffs are entitled to the specific use without infringing upon the legislative function. (*Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill.2d 370, 167 N.E.2d 406; *Franklin v. Village of Franklin Park*, 19 Ill.2d 381, 167 N.E.2d 195.) As our Supreme Court stated in *Franklin* after declaring an existing zoning classification to be invalid and granting the requested relief:

"The evidence that was offered in this case concerned the

compatibility of commercial and light industrial uses with uses on the surrounding property. If the ordinance was declared unconstitutional and the land left unzoned, the plaintiff would be free to use his land for heavy industrial uses not contemplated at the trial, or the village might rezone to another classification that would still exclude most commercial and industrial uses. In either case the true holding of the court would be flaunted. The court may frame its judgment to effectuate its findings as to the rights of the parties." *Franklin v. Village of Frankin Park*, 19 Ill.2d 381, 385, 167 N.E.2d 195, 197.

In the instant case, the neighborhood surrounding the subject property cannot be readily characterized due to the variety of the different uses and zoning classifications. Single-family residences, two-story townhouses, a large apartment complex, and a declining strip shopping area all coexist within close proximity to each other. Moreover, plaintiffs have produced ample evidence that the trend of the neighborhood is towards multiple-family residential.

Defendant has produced no evidence that the proposed use would have a deleterious effect or be otherwise unreasonable. To the contrary, the planning consultant hired by the Village to prepare a comprehensive zoning scheme recommended a R4 classification. The proposed use would be compatible with a R4 rezoning. Evidence that the proposed development would have an adverse effect upon on-street parking is highly speculative and of little probative value since the final plans for the development have not yet been submitted and the Village revised its off-street parking requirements after plaintiffs presented their proposed plan.

■■ In light of the substantial evidence adduced at trial showing the variety of surrounding uses and the clear trend of the neighborhood towards multiple-family residential, we believe that plaintiffs' request for the proposed use should have been granted.

■■ We have taken under advisement the Village's affidavit that the property was rezoned to a R3 classification on November 18, 1974, 1½ months after the judgment below was entered and after jurisdiction in this court was perfected by the filing of plaintiffs' notice of appeal. In a similar case involving the Village, we invalidated an eleventh-hour amendment to the zoning ordinance which would have deprived a petitioner of its judicially secured relief. (*First National Bank of Skokie v. Village of Skokie*, 85 Ill.App.2d 326, 229 N.E.2d 378.) In light of our holding that plaintiff was erroneously denied his requested relief in this case, we once again decide that the amendment enacted by the Village had no effect on the rights of the plaintiffs. Moreover, since we have not

550

found that the trial court acted correctly below, this court's decision in *Mangel & Co. v. Village of Wilmette,* 115 Ill.App.2d 383, 253 N.E.2d 9, is clearly inapposite to the case at bar.

Reversed and remanded with directions to enter an order not inconsistent with the opinion stated herein.

*Reversed and remanded with directions.*

DRUCKER and SULLIVAN, JJ., concur.